# EXHIBIT A



RECEIVED BY

JAN 0 4 2005

CREDENTIALING UNIT

## APPLICATION FOR MEMBERSHIP IN VISION SERVICE PLAN®

I, the undersigned, a fully licensed and Therapeutic Pharmaceutical Agent (TPA) certified optometrist or ophthalmologist certified by either the American Board of Ophthalmology (ABO) or the American Osteopathic Board of Ophthalmology and Otorhinolaryngology (AOBOO), in good standing in the State of my licensure, with no restrictions, limitations and/or probationary terms against my license, hereby apply to Vision Service Plan ("VSP®") for membership. On approval of this application, and as consideration for such membership, I agree to be bound by this application and the attached Member Doctor Agreement, including by reference, VSP's Articles of Incorporation, Bylaws, *VSP Provider Reference Manual*, standards, protocols, rules and Schedules of Compensation, together with all amendments and addenda to any and all such documents that may be duly adopted by VSP from time to time (collectively the "Agreement"). I agree that I may be removed from membership for failing to comply with the Agreement and/or the terms and conditions stated herein.

I certify that I now conform to the terms of the Agreement and will adhere to them as long as I remain a "Member Doctor", as defined herein, of VSP. The rights and obligations under this Agreement, and granted membership with VSP, will commence on the "Effective Date" as defined herein, and will remain in effect for three years or until my VSP recredentialing date, whichever comes first, unless earlier terminated by either party as provided for in the Agreement.

I understand that if this application is approved, I will be granted membership in VSP, subject to the terms and conditions contained in the Agreement.

If such application is approved, I agree that I will adhere to the Agreement and will not resign from membership without giving at least ninety (90) days prior written notice to the VSP Board of Directors of my intention to resign. I further agree that until such resignation is final, I will continue to perform service in conformity with the Agreement.

I certify that I have read and understand the Agreement. I hereby certify that all facts represented in this application, and the attached Member Doctor Agreement, are true and correct, and that I now comply with all of the terms and conditions contained herein/therein. I understand that this Agreement replaces and supercedes any/all prior Member Doctor Agreements to which I am a party.

I understand and agree that, this Agreement may be executed in counterparts, copies of which, when taken together, shall be deemed to be an original, and shall be binding upon the parties hereto. Copies of signatures shall be deemed as if they were original signatures. The executions to this Agreement may be deemed an original signature. In addition, I agree to timely deliver to VSP, within 30 days of such transmission, an executed original signature page of this Agreement.

## Member Doctor AGREEMENT

# MEMBER DOCTOR AGREEMENT

## A. DEFINITIONS

1. "Clean Claim" shall mean a completed claim with sufficient and necessary documentation, as defined in the *VSP Provider Reference Manual*, for VSP to accurately evaluate and pay the claim submitted.

2. "Client" shall mean an employer group, managed care organization ("MCO") or other payer who has entered into a contract with VSP for the provision of Vision Care Services.

3. "Confidential Information" shall mean confidential or proprietary information and systems, or access thereto, concerning Enrollees and/or VSP, including membership therein.

4. "Contract" shall mean a written agreement entered into between VSP and a Client pursuant to which VSP is obligated to provide Vision Care Services to Enrollees and to pay Member Doctor for providing Vision Care Services to Enrollees.

5. "Copayment" shall mean those charges that will be collected directly from the VSP Patient for Covered Services.

6. "Covered Services" shall mean those Vision Care Services which VSP is obligated to provide under the terms of a Contract that VSP has entered into with a Client, or has guaranteed to provide to an authorized beneficiary of a VSP-sponsored charitable program, and which are identified as Covered Services in the *VSP Provider Reference Manual*. These may include discounts on materials.

7. "Cut-Off Date" shall mean the last day of Clean Claims processing prior to the close of the payment cycle, as defined in the *VSP Provider Reference Manual*.

8. "Effective Date" shall mean the date upon which VSP shall have executed this Agreement as shown on the signature page hereof.

9. "Emergency Services" shall mean services required to evaluate or stabilize a condition to which a reasonable person could expect in the absence of immediate medical attention to result in serious jeopardy to the health of the Enrollee, serious impairment to bodily functions or serious dysfunction of any bodily organ or part.

10. "Enrollee" shall mean an individual entitled to, and/or the recipient of, Vision Care Services pursuant to a Contract with a Client.

11. "Medicare Beneficiary" shall mean a VSP Patient or Enrollee who is entitled to receive Vision Care Services under the terms of a Contract between VSP and a Client offering a Medicare Program.

12. "Medicare Program" shall mean a program to provide services to a Medicare or Medicare Plus Choice Beneficiary eligible for coverage under Title XVII of the Social Security Act (otherwise known as Medicare).

13. "Member Doctor" shall mean the optometrist or ophthalmologist that has entered into this Agreement with VSP to provide Vision Care Services to a VSP Patient.

14. "Member Doctor List" shall mean a printed or electronic listing of the names and addresses of all Member Doctors, including Member Doctor, in a specific geographical area.

000034

15. "Protected Health Information (PHI)" shall mean information relating to a VSP Patient's past, present, or future health or condition, the provision of health care to a VSP Patient, or payment for the provision of health care to a VSP Patient. PHI includes, but is not limited to, patient name, Social Security Number, member ID, service date, diagnosis, and claim information.

RECEIVED BY JAN 11 2005 CREDENTIALING UNIT

16. "Schedule of Compensation" shall mean a schedule of fees that will be paid by VSP to a Member Doctor for Covered Services.

17. "Vision Care Services" shall mean eye care services and materials.

18. "VSP Patient" shall mean an Enrollee who obtains Covered Services from a Member Doctor.

19. "*VSP Provider Reference Manual*" shall mean a manual, either in hardcopy or an electronic version (to which Member Doctor is provided secured access to) including any changes or amendments thereto, containing information regarding VSP's vision care plans and the administrative duties and responsibilities of the Member Doctor.

## B. MEMBER DOCTOR OBLIGATIONS

In addition to VSP's Articles of Incorporation, Bylaws, *VSP Provider Reference Manual*, standards, protocols, rules and Schedules of Compensation, together with all amendments and addenda to any and all such documents that may be duly adopted by VSP from time to time and referred to herein, the Member Doctor understands and agrees:

1. That VSP was founded on the belief that patients' interests are best served by the independent eyecare professional. This is the cornerstone of VSP's operational philosophy. Member Doctor may not be affiliated, contractually or otherwise, with retail-commercial chain or franchise vision care entities.

2. That VSP, including its directors, officers, employees and trustees, are specifically released from any and all liability for errors or omissions in preparation and dissemination of the Member Doctor List.

3. To see any Enrollee, or an authorized beneficiary of a VSP-sponsored charitable program, without discriminating on the basis of race, color, creed, ancestry, national origin, gender, age, religion, marital status, sexual orientation, health status, physical or mental disability, government-sponsored health insurance programs, or the VSP program defined herein as Covered Services, in accordance with the instructions published in the *VSP Provider Reference Manual*.

4. To render Covered Services in a manner consistent with professionally recognized standards of health care to each Medicare Beneficiary in accordance with the terms and conditions of the Medicare Program.

5. To give each Enrollee the same level of courtesy and service that Member Doctor would give to any person who is not an Enrollee. Member Doctor further agrees, in consideration of Member Doctor's membership, to conduct himself/herself in a manner that is supportive of VSP, each Client, and every Enrollee. If at any time Member Doctor fails to serve any Enrollee in a courteous manner and/or demonstrates unwillingness or inability to work cooperatively for the best interests of VSP, or its plans, then in that event, Member Doctor's membership will be subject to immediate termination.

6. To perform each of the procedures and tests prescribed in the *VSP Provider Reference Manual*, as well as any other tests that are, in the Member Doctor's professional judgment, indicated. Member Doctor agrees to keep written records of such tests and procedures provided, which shall remain confidential, in compliance with applicable State and Federal law, and make them available to VSP, in the event VSP desires to review such documents. Member Doctor agrees to obtain authorization from and submit all claims to VSP, in accordance with the requirements set forth in the *VSP Provider Reference Manual*. Member Doctor agrees to certify the accuracy, completeness, and truthfulness of the data contained in all claims and information submitted to VSP. VSP shall have the right to deny payment or to make deductions from future payments as a result of Member Doctor's failure to follow prescribed procedures.

7. Not to look to the VSP Patient for money owed for Covered Services, except any Copayment or fees for Vision Care Services which are not Covered Services, according to the published VSP Patient Options List as outlined in the *VSP Provider Reference Manual*. Neither Member Doctor, nor the agent, trustee and/or assignee of Member Doctor, may initiate or maintain any action at law against a VSP Patient for sums owed to Member Doctor by VSP. VSP is a nonprofit organization, and Member Doctor recognizes that Member Doctor must share in the risk and administrative costs of the organization, and agrees to accept such monies as are available to pay Member Doctor on a basis that is consistent with VSP's then current payment practice. In the event Member Doctor submits a claim late, or VSP is financially unable to pay all or any part of Member Doctor's fee for Covered Services, Member Doctor will not look to the VSP Patient for such payment. The cost of any withholding or benefit reserve may not be passed on to the VSP Patient.

8. That in the event a VSP Patient wishes to purchase additional Vision Care Services beyond those provided as Covered Services, Member Doctor will not charge the VSP Patient more for such services or materials than Member Doctor normally charges a patient who is not a VSP Patient. Member Doctor shall notify VSP Patient of any monies owed by VSP Patient for non-Covered Services, prior to performing any non-Covered Services.

9. That if Member Doctor incorrectly bills VSP, or a VSP Patient, for Vision Care Services provided to a VSP Patient which are excluded from Covered Services, or which are more expensive than those allowed thereunder, VSP may charge the account of Member Doctor for monies found owing by Member Doctor to VSP, or the VSP Patient, as determined by VSP.

10. To collect each applicable Copayment and any fees for Vision Care Services which are not Covered Services. Member Doctor further agrees not to impose any surcharge on VSP Patients for Covered Services. Whenever VSP receives notice of any such surcharge, it shall take appropriate action. Member Doctor will report to VSP in writing all surcharges and Copayment monies paid by VSP Patient directly to Member Doctor.

11. To maintain office hours that will enable Member Doctor to adequately provide Vision Care Services to each Enrollee. Member Doctor will provide accessibility for Emergency Services 24 hours a day, seven days a week. Member Doctor also agrees to be physically in attendance in at least one office being used by Member Doctor to provide Vision Care Services to any Enrollee for a minimum of sixteen (16) hours per week. Additionally, each VSP office must be staffed by VSP Member Doctor(s) a minimum of 16 hours per week.

12. That the services of Member Doctor to any VSP Patient will be subject to review. Member Doctor agrees to cooperate with, abide by, and adhere to, rulings of any VSP quality assurance or peer review committee. All records, data and information acquired by, or prepared for, any VSP quality assurance or peer review committee shall be held in confidence, except to the extent necessary to carry out the

000036

Dec 17 2007 4:45PM HP LASERJET FAX     p.5

purposes of such review activities, and shall not be subject to subpoena or discovery, which limitations shall survive the termination of this Agreement. Member Doctor further agrees that upon request, Member Doctor will furnish case records of any or all Enrollee(s) for whom claims have been submitted, and that VSP may use any information so obtained for statistical, actuarial, scientific, peer review or other reasonable purposes, including applicable State and Federal law requirements, provided that no professional confidence shall be breached thereby. Member Doctor also agrees that utilization and claims information may be released to Managed Care Organizations (MCOs) and peer review groups. The confidentiality of VSP Patient medical information will not be compromised.

13. That nothing contained herein shall interfere with the ordinary relationship that exists between Member Doctor and VSP Patient, including the liability for malpractice. Unless expressly limited by applicable state law, Member Doctor shall maintain and upon request furnish evidence of professional liability (malpractice) insurance coverage in an amount not less than $1,000,000 per occurrence/$3,000,000 annual aggregate total, throughout the term of this Agreement. Member Doctor shall maintain individual limits of professional (malpractice) liability coverage, not to be shared with another individual or entity. Member Doctor shall also maintain and upon request furnish evidence of general liability coverage in an amount not less than $1,000,000. Member Doctor further agrees to notify VSP within ten (10) days of any lapse in professional or general liability insurance coverage, and to indemnify and hold harmless VSP against any damages or claims it may suffer, including attorney fees, that result from the failure of Member Doctor to maintain such insurance coverage and/or the relationship between Member Doctor and VSP Patient.

14. In the event of any dispute(s) as to services, materials, or payment for same, concerning an Enrollee, the facts of such dispute shall be submitted to the VSP Board of Directors, or any Committee duly appointed thereby, and the decision of the Board or duly appointed Committee shall be final and binding, and any money found owing to VSP by reason of such dispute may be deducted from any future payments to Member Doctor. In the event of any dispute(s) as to services, materials, or payment for same, concerning VSP, or any of its subsidiaries, the facts of such dispute shall be submitted to the VSP Board of Directors, or any Committee duly appointed thereby, and that the decision of the Board or duly appointed Committee shall be final and binding, and any money found owing to VSP, or any of its subsidiaries, by reason of such dispute may be deducted from any future payments to Member Doctor.

15. To notify VSP within thirty (30) days of any change of address, addition or closure of office locations, the addition or severance of any associates, and/or any material change(s) in the ownership, operations and/or management of the practice. Member Doctor further agrees to notify VSP immediately of the revocation, suspension, restriction, limitation or imposition of any probationary terms regarding the licensure of Member Doctor as well as any condition or event affecting the ability of Member Doctor to practice optometry or ophthalmology.

16. To maintain all VSP Patient medical records and all other books and records relating to Covered Services provided to Enrollees in such form and containing such information as required by community standards, MCO contracts with VSP, accreditation organizations and/or State and Federal law. Upon request and within the time frame requested, Member Doctor shall, at no cost, provide to VSP, appropriate State and Federal authorities, and contracting MCOs access to or copies of Enrollee medical records and other records relating to the provision of Covered Services for purposes of quality assurance, case management and utilization reviews; credentialing and peer review; claims processing, verification and payment; Enrollee grievance and appeal resolution; and other activities reasonably necessary for compliance with the standards of accreditation organizations and the requirements of State and Federal law. Member Doctor agrees to cooperate in a timely manner with Medicare appeals and expedited appeals procedures. Member Doctor agrees to make internal

000037

practices, books, and records relating to the use and disclosure of PHI available to VSP, or at the request of the Secretary of the Department of Health and Human Services, in the time and manner designated by VSP or the Secretary, for purposes of determining VSP's compliance with the Health Insurance Portability and Accountability Act (HIPAA), 45 CFR Parts 160 and 164.

17. To use and disclose patient records and PHI only in accordance with the terms of this Agreement and applicable State and Federal law, including the Health Insurance Portability and Accountability Act (HIPAA), 45 CFR Parts 160 and 164.

18. That Member Doctor shall ensure timely access by Enrollees to the records and information that pertains to them. All records relating to the provision of Covered Services shall be retained by Member Doctor for six (6) years following the provision of services and as required by State or Federal law. This obligation shall not cease upon termination of this Agreement, by rescission or otherwise. Member Doctor information provided to VSP may be furnished to a third party who has contracted with VSP for the purpose of providing additional care to Enrollees.

19. To implement the processes necessary to support individual rights, as identified in 45 CFR part 164, including the right to 1) receive a Notice of Privacy Practices, 2) request access to PHI, 3) request restriction on use and disclosure of PHI, 4) request amendment of PHI, 5) request confidential communications of PHI, and 6) file a complaint about office privacy practices.

20. That all of the points in this Agreement, including VSP's Articles of Incorporation, Bylaws, *VSP Provider Reference Manual*, standards, protocols, rules and Schedules of Compensation, together with amendments and addenda thereto, shall constitute the entire Agreement between Member Doctor and VSP, and that none of these provisions therein can be waived verbally by any agent or officer of VSP. The benefits of this Agreement are not assignable by Member Doctor, and any unapproved change of office address and/or material change in the ownership/operations/management of the practice shall render the Agreement immediately void.

21. That either party may terminate this Agreement by giving the other party at least ninety (90) days prior written notice. Save and except, however, VSP may terminate this Agreement immediately if Member Doctor fails to comply with the terms and conditions herein, VSP policies, rules, procedures, and/or guidelines.

22. To comply with all VSP policies, rules, procedures, and guidelines, including utilization management, quality management and credentialing; and to cooperate in the investigation into and resolution of any Enrollee grievance procedures involving the Member Doctor. Member Doctor agrees to comply with the applicable provisions of all contracts VSP may have with MCOs and employer groups as amended from time to time. The MCO has a statutory responsibility to monitor and oversee the offering of Covered Services to Enrollees. When required, Member Doctor shall cooperate and comply with all credentialing requirements of any contracted MCOs and with contracted external review organizations. Member Doctor understands that MCOs in contract with VSP are required by law to approve or disapprove the participation in their plan of any Member Doctor in contract with VSP. MCOs shall have the right to disapprove Member Doctor's participation in MCO's plan at any time during the term of the Contract between MCO and VSP. Medicare MCOs are obligated by law to disapprove of a provider who has been excluded from participation in Medicare under sections 1128 or 1128A of the Social Security Act. Member Doctor agrees to refrain from employing or contracting with any individual who has been excluded from participation in the Medicare Program.

000038

Dec 17 2007 4:46PM HP LASERJET FAX        p.7

RECEIVED BY
JAN 04 2005
CREDENTIALING UNIT

23. To comply with all State and Federal laws applicable to their practice. Member Doctor, as a recipient of Federal funds through the Medicare Program, also agrees to comply with all laws applicable to entities receiving Federal funds, including, but not limited to, Title VI of the Civil Rights Act of 1964, the Age Discrimination Act of 1975 and the Americans with Disabilities Act. Member Doctor agrees to indemnify and hold harmless VSP against any damages or claims it may suffer, including attorney fees, that result from the failure of Member Doctor to comply with any State or Federal laws applicable to their practice.

24. To cooperate in, and abide by, coordination of benefits, workers compensation, and subrogation policies and procedures, as defined in the *VSP Provider Reference Manual*.

25. That Confidential Information constitutes unique, valuable and special business or other information, the disclosure of which would cause irreparable injury to VSP. Member Doctor agrees not to disclose to any third party, directly or indirectly, or use in any way that is adverse to VSP's best interests, Confidential Information that Member Doctor has been provided with, or access to. Member Doctor shall indemnify VSP against all liability, damages and loss, including attorney's fees and costs, arising from the breach hereof or VSP's enforcement of this Agreement. Member Doctor shall promptly notify VSP of any inquiry or legal proceedings seeking disclosure of Confidential Information. This provision shall survive the termination of this Agreement.

26. That in the event of termination of this Agreement by either party, Member Doctor is prohibited from making any representation of being affiliated with VSP. Member Doctor's name will continue to appear on the Member Doctor List only until the next update, at which time it will be removed. As Enrollees schedule appointments, Member Doctor agrees to promptly advise Enrollees that Member Doctor can no longer provide Covered Services to Enrollee as a Member Doctor, nor will the Enrollee be liable for payment of any charges incurred without the Enrollee's prior knowledge of this fact. This provision shall survive the termination of this Agreement.

## C. OBLIGATIONS OF VSP

VSP agrees:

1. To provide Member Doctor with a *VSP Provider Reference Manual* which will include information on benefit exclusions, administrative and utilization management, and VSP credentialing and quality assurance program requirements; and to provide Member Doctor with updates to the *VSP Provider Reference Manual* with timely notifications of any changes to plans or policies.

2. To maintain the confidentiality of the Member Doctor personal and professional information provided to VSP for membership and credentialing purposes, subject to the terms of this Agreement and any applicable State or Federal laws.

3. To provide sufficient mechanisms that allow Member Doctor to verify Enrollee eligibility.

4. To pay Member Doctor for Covered Services provided to a VSP Patient in accordance with the compensation specified in the Schedule of Compensation.

5. To pay Member Doctor at the end of each month for each Clean Claim received by VSP prior to the Cut-Off Date for that month.

6. To notify Member Doctor if information obtained by VSP, or authorized agent, during the credentialing process varies substantially from the information provided by Member Doctor. VSP agrees to permit Member Doctor to review and correct this information in a timely manner.

7. To provide Member Doctor with written notice of the basic reasons for any adverse decision resulting in a change in membership status. VSP agrees to comply with all applicable State and Federal laws governing the rights of the Member Doctor to due process in the appeal of all adverse decisions resulting in a change of contractual privileges or membership status.

8. That VSP shall remain liable to Member Doctor for Covered Services being rendered to any VSP Patient who is under the care of Member Doctor at the time of termination of this Agreement. VSP also agrees to permit Member Doctor to continue providing the Covered Services until such Covered Services are complete, or until VSP makes reasonable and appropriate provision for the Covered Services to be provided by another Member Doctor.

9. Not to prohibit the Member Doctor from communicating to VSP, disagreement with VSP's decision to deny or limit benefits to a VSP Patient. VSP agrees not to terminate the Agreement merely because the Member Doctor discusses with a current, former or prospective VSP Patient any aspect of the VSP Patient's medical condition, any proposed treatments or treatment alternatives, whether covered by VSP or not, policy provisions of a plan, or a Member Doctor's personal recommendation regarding selection of a health plan based on the Member Doctor's personal knowledge of the health needs of such VSP Patients.

## CONDITIONS OF MEMBERSHIP

In addition to other obligations stated herein, membership in VSP shall be subject to the following conditions:

A. Member Doctor shall not willfully violate the optometry law or the medical law in the applicable State(s) of licensure.

B. Member Doctor shall not offer or provide, or use others to offer or provide, any consideration or other inducement to any Client or Enrollee, to encourage the obtaining of Vision Care Services from Member Doctor. Nor shall Member Doctor permit his/her name to be used in any mailing or other solicitation of Enrollees except in the Member Doctor List and/or as specifically authorized by VSP.

C. Ownership and control of a Member Doctor's practice, including dispensary, is essential for VSP membership. Member Doctor shall have, or be employed by another VSP Member Doctor who has, majority ownership and complete control of all aspects of his/her practice, including dispensary.

D. Member Doctor shall provide complete Vision Care Services at all office locations occupied by Member Doctor for the practice of optometry or ophthalmology. Member Doctor shall maintain the ability at all office locations to provide a comprehensive level of Vision Care Services, including dispensing services, and shall supply ophthalmic materials.

E. Each optometrist and ophthalmologist providing Covered Services to a VSP Patient in any office location of Member Doctor must be an authorized Member Doctor, all office locations owned or occupied by Member Doctor must be VSP qualified office locations (as defined in C and D above), and all Vision Care Services provided to any Enrollee by Member Doctor must be rendered in VSP qualified office locations.

000040

Dec 17 2007 4:48PM  HP LASERJET FAX                          p.9

RECEIVED BY
JAN 04 2005
CREDENTIALING UNIT

F. An optometrist or ophthalmologist that does not meet the requirements of Condition C above, may qualify to become a Member Doctor if he/she practices in an approved multi-specialty practice. An approved multi-specialty practice is defined by VSP as one in which the practice and dispensary are owned by a duly constituted professional organization that demonstrates:

1. That the organization is made up entirely of, and owned totally by, both eye doctors (optometrists and ophthalmologists), and physicians who are not eye doctors;
2. That the optometrists, physicians and surgeons are actively practicing their specialties in that organization;
3. That each Member Doctor in the organization has an ownership interest in the organization;
4. That the control of all professional eye care services, including dispensing, is delegated solely to the Member Doctors in that organization; and
5. That the optometrists in that organization are actively practicing to the full extent of their licensure.

G. The registered marks, "VSP" and "Vision Service Plan," as well as the VSP logo(s), are, and shall remain, exclusively owned by VSP. Member Doctor may be granted a limited and revocable license to use the mark "VSP" and the registered VSP logo(s) in accordance with the Guidelines set forth in the *VSP Provider Reference Manual*, and upon VSP's receipt and approval, in its sole discretion, of a Limited License Agreement, in form provided, executed by Member Doctor. No license will be granted to use the mark, "Vision Service Plan." In the event that the limited license is not offered and approved, or is revoked, by VSP, Member Doctor shall not use said marks or logo(s), or any variation thereof, in any advertising of any kind, other than as specifically authorized by VSP, which may include window decals and in-office signage provided to Member Doctor directly by VSP.

H. No Member Doctor shall provide VSP with any misleading or false information. Provision of any such information, including, but not limited to, information regarding claims, services provided, patients treated, premises where treatment was provided, status of licensure, and/or the ownership/operation/management of the practice, including dispensing facility, shall be grounds for immediate termination of this Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the day and year first written below.

MARK BARRON | Cheryl A. Johnson
--- | ---
Applicant/Member Doctor (Print Name) | VSP (For Internal Use Only)
*M B* (Signature) | MAR 23 2005
Signature | Signature
12/28/04 | 
Date | Date
1465 So REYNOLDS | 
Primary Address | 
TOLEDO OH 43615 | 
City, State, Zip | 
419-385-4011 | 
Telephone | 
U75858 | 
UPIN Number | 

**PLEASE RETAIN A COPY FOR YOUR RECORDS**