# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Mark Barron, O.D. ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | |
| ) | |
| Vision Service Plan ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT OF MARK BARRON, O.D., IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Mark Barron, state under oath as follows:

1. The following is based on my personal knowledge.

2. I have been an optometrist in practice for 28 years.

3. I have been a Vision Service Plan ("VSP") member doctor since approximately 1993.

4. If this Court does not issue an injunction against VSP, preventing my expulsion from VSP membership, then I will suffer irreparable harm.

5. I was self-employed and practicing optometry in Ohio when VSP issued a grandfathering letter to me in August 1995. I did not own a dispensary at that time.

6. I am currently self-employed. I continue to manage and control my own practice.

7. I was not a party to the acquisition of D.O.C. Optics by Luxottica U.S.

Holdings Corp. ("Luxottica") in February 2007, and my consent was not required for the assignment of the D.O.C. Optics subleases to Luxottica.

8. VSP sent a letter and questionnaire to me dated March 9, 2007, which I completed and returned on or about March 15, 2007.

9. I did not receive a salary from D.O.C. Optics and do not receive a salary today from Luxottica. Neither company has issued a form W-2 to me.

10. I had total revenue in 2006 of $169,587. The net profit on these revenues was $144,378.

11. VSP's reimbursements are a significant portion of my business, totaling approximately 23% of my annual revenue in 2006. For the first 11 months of 2007, I have earned $28,555 in reimbursements from VSP and approximately $3,783 in co-pays from VSP-insured patients.

12. In 2006 VSP-insured patients represent approximately 40%, or about 1,240 of my current patients. VSP's reimbursement of services for VSP-insured patients represents approximately 55% of my reimbursements, an amount of approximately $38,741 for 2006. My next largest insurance payor, Spectera, reimbursed me in an amount less than 12% of what VSP reimbursed me, or about $4,500, in 2006.

13. Some VSP patients are not covered by VSP if they see an out-of-network doctor.

14. If a VSP patient's benefits provide for out-of-network coverage, the exam is more expensive for the VSP patient than if the patient went in-network.

15. I received VSP's final termination notice dated November 28, 2007 by certified mail on December 3, 2007. Under this termination, I will be able to see VSP-

patients as a VSP panel doctor through January 3, 2008. Beginning on January 4, 2008, VSP-insured patients will be forced to choose between seeing me as an out-of-network provider, typically at their own expense, or selecting a different doctor.

16. I will be operating at a significant loss should an injunction not be issued because most of those patients will probably switch to an in-network provider.

17. If I am removed from VSP's network, I stand to lose approximately 40% of all my total patients.

18. By losing patients who switch to in-network providers, I will lose a significant number of new patient referrals.

19. The loss of revenue from VSP patients would not be offset by a reduction in expenses. The vast majority of my operating costs are not variable. My rent, facilities contribution, and staff support contribution are fixed and are based on a 1 year lease agreement. The rent, facilities contribution, and staff support contribution does not vary based upon revenue. The amount of other costs cannot be significantly reduced without an adverse impact on patient care.

20. I also cannot immediately find other patients to fill the void created by a loss of my VSP patients. Building a practice takes years, as it depends heavily on referrals.

21. I have invested approximately 14 years building up my VSP practice and developing relationships with thousands of VSP patients, thereby foregoing the development of relationships with certain other non-VSP patients.

22. Because of all of the above factors, if I am not successful in obtaining the requested injunction, the loss of VSP business would cause a substantial reduction in my take home profits.

23. Even if I could recover from the financial devastation of losing VSP patients, I would have other collateral damage. If VSP is successful in removing me from VSP's provider panel, there will be a long-lasting impact on my ability to join and re-enroll in other vision insurance programs. Many other vision programs, such as Spectera, EyeMed, NVA, Superior Vision, and Avesis, ask doctors when enrolling or re-enrolling if any insurer or managed care organization has denied, suspended or revoked their participation.

24. If removed from VSP's provider panel I will have to answer this question affirmatively. Answering 'Yes' to this professional question on a payer's credentialing or ce-credentialing application likely will result in further scrutiny by the payers' credentialing committee.

25. At the informal hearing held before the VSP Quality Management Committee on August 10, 2007, (the "informal hearing"), I testified that the grandfathering letter did not require that I remain employed by D.O.C. Optics. It only required that I remain employed by my 1995 employer.

26. At the informal hearing I testified that I had had the same employer from 1995 through the present – myself. I also testified that I had never been an employee of D.O.C. Optics.

27. I affirm the truthfulness of all my testimony in hearings held before VSP.

I, Mark Barron, hereby declare under penalty of perjury under the laws of the State of Ohio that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this 28th day of December 2007, at Toledo, Ohio.

<u>Mark Barron, O.D.</u>

ANTHONY J. SPRENGER
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 06-17-09